UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| LISA C. OTT, | : | Case No. 1:08-cv-399 |
| Plaintiff, | : | Judge S. Arthur Spiegel |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE ALJ UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g); AND (3) THIS CASE BE CLOSED.**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff "not disabled," and, therefore, unentitled to a period of disability and disability income benefits. (See Administrative Transcript ("Tr.") 18-31).

## I. FACTS AND PROCEDURAL HISTORY

As ultimately determined by the ALJ, Plaintiff suffers from the following severe impairments: multiple sclerosis ("MS") and associated symptomatology; pain from cervical disc disease and residuals of cervical surgery and fusion; and a cognitive disorder. (Tr. 23). This action began on September 12, 2002, when Plaintiff filed an

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

application for disability insurance benefits alleging a disability onset date of May 25, 2001, due to protruding discs in the upper neck. (See Tr. 75-77).

On December 19, 2002, Plaintiff's claims were initially denied on the state agency level. (Tr. 58-61). Thereafter, Plaintiff requested reconsideration of the initial denial. (Tr. 62-64). On reconsideration, Plaintiff's claims were again denied. (Tr. 65-67). Plaintiff then requested a hearing *de novo* before an ALJ. (Tr. 68-70). Initially, hearings were held on June 25, 2004 and November 22, 2004. (Tr. 534-545, 546-589). A vocational expert ("VE"), Robert Breslin, testified at the hearing held on November 22, 2004. (Tr. 581-587).

On February 24, 2005, the ALJ entered a decision finding that Plaintiff's impairments did not prevent her from performing her past relevant work, and, therefore, that Plaintiff was not disabled. (Tr. 326). As a result, the ALJ found that Plaintiff was not entitled to a period of disability or disability insurance benefits. (*Id.*)

Thereafter, Plaintiff requested a review of the ALJ's decision by the Appeals Council. (Tr. 337). On November 3, 2005, the Appeals Council granted the request for review, vacated the decision of the ALJ, and remanded the case back to the ALJ in light of new evidence suggesting that Plaintiff suffered from MS. (Tr. 343-344).

The ALJ held a remand hearing on May 17, 2007, at which Plaintiff appeared with counsel and testified. (Tr. 590-647). A medical examiner, Dr. Goren, testified via telephone during that hearing. (Tr. 612-652). A different VE, Val Root, also appeared

and testified at the hearing. (Tr. 641-644).

On October 15, 2007, the ALJ entered his decision finding Plaintiff not disabled. (Tr. 18-30). That decision became Defendant's final determination upon denial of review by the Appeals Council on May 22, 2008. (Tr. 14).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant met the insured status requirements for disability insurance benefits on her alleged onset date of May 25, 2001, and continues to meet them through December 31, 2008.

2. There is no evidence that the claimant has engaged in any substantial gainful activity since her alleged onset date (20 CFR 404.1520(b), 404.1571 et seq.).

3. The claimant has the following severe impairments: multiple sclerosis and associated symptomatolgy, pain from cervical disc disease and residuals of cervical surgery and fusion, and a cognitive disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. Careful consideration of the entire record shows that the claimant has the residual functional capacity to perform a range of light work.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on November 24, 1965 and was 35 years old on her alleged onset date, and is considered to be a younger individual (20 CFR 404.1563).

8. The claimant has more than a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 25, 2001 through the date of this decision (20 CFR 404.1520(g)).

(Tr. 20 - 21). In sum, the ALJ concluded that Plaintiff was not entitled to a period of disability or disability insurance benefits. (Tr. 30).

On appeal, Plaintiff argues that the ALJ erred: (1) in assessing the weight given to the opinions of Dr. Reed and Dr. Goren; (2) in assessing the weight given to the opinions of Dr. Nolan and Dr. Guo; (3) in failing to note the waxing and waning of symptoms associated with MS; (4) in evaluating Plaintiff's credibility, pain and subjective complaints; and (5) in asking an improper hypothetical question to the VE.

The undersigned finds merit in the first, second and fifth assignments of error and recommends that this matter be remanded under sentence four of 42 U.S.C. § 405(g) for further fact-finding.

## II. ANALYSIS

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted).

### A.

In her first two assignments of error, Plaintiff argues that the ALJ erred in according little to no weight to the opinions of Dr. Nolan, Dr. Guo, and Dr. Louis, and, instead, relying significantly on the RFC opinion given by Dr. Goren, a non-examining doctor. Specifically, Plaintiff contends that Dr. Goren's opinion improperly relies on an

Expanded Disability Status Scale ("EDSS") rating of Plaintiff, as assessed by Dr. Reed, Plaintiff's treating neurologist. Plaintiff argues that an EDSS score fails to accurately assess her ability to engage in a full work week because it does not measure: (1) her ability to use her hands and arms; (2) the extent of fatigue she suffers; (3) her vision; (4) or her urination problems.

As a general rule in social security disability cases, opinions of treating doctors are given greater deference than opinions given by non-treating doctors. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). This rule is "commonly known as the treating physician rule." *Id*. (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004)). The rationale behind the treating physician rule is that, "treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone[.]'" *Rogers*, 486 F.3d at 242 (citing 20 C.F.R. § 416.927(d)(2)).

In determining the matter, an ALJ must specifically set forth "good reasons" for discounting the treating physician's conclusions. *Rogers*, 486 F.3d at 242. Such reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. (citing Soc. Sec. Rul. 96-2p, at *4). An ALJ's failure to explain "precisely how those

reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243 (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2nd Cir. 1999)).

In assessing differing medical opinion evidence, an ALJ considers the factors set forth in 20 C.F.R. § 404.1527(d)(2). Under that regulation, "the opinion of a treating physician is entitled to controlling weight if such opinion (1) 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques,' and (2) 'is not inconsistent with the other substantial evidence in [the] case record.'" *Meece v. Barnhart*, 192 Fed.Appx. 456, 460 (6th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(2)).

However, even if a treating physician's opinion is not entitled to controlling weight under 20 C.F.R. § 404.1527(d)(2), the ALJ must determine what weight to give differing medical conclusions by applying the remaining factors listed in 20 C.F.R. § 404.1527(d). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece*, 192 Fed.Appx. at 461 (citing 20 C.F.R. §§ 404.1527(d)(2) - (d)(6)).

While a treating physician's opinion must typically be accorded significant weight,

such "opinion must be supported by objective medical facts." *Carter v. Comm'r of Soc. Sec.*, 36 Fed.Appx. 190, 191 (6th Cir. 2002) (citing *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir.1992); *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir.1987); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985)). As a result, an "ALJ is entitled to disregard the treating physician's opinion where it is not supported by clinical findings or medical evidence." *Carter*, 36 Fed. Appx. at 191 (citing *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir.1994)). As noted by the Sixth Circuit, an examining doctor's opinion may be disregarded in favor of a nonexamining doctor's opinion where the nonexamining doctor "clearly states the reasons for his differing opinion." *Carter*, 36 Fed.Appx. at 191.

## Dr. Nolan

Dr. Nolan is Plaintiff's primary care physician. (Tr. 26).[2] On February 17, 2004, Dr. Nolan competed a physical functional capacity assessment of Plaintiff, wherein he found that Plaintiff: could only stand and/or walk for a total of one hour per workday, and for only one hour without interruption; could sit for only one hour per workday, and for one hour without interruption; was limited in her ability to lift and/or carry objects; was moderately limited in her ability to push, pull, perform repetitive foot movements and see; and was markedly limited in her ability to reach and handle. (Tr. 233).

---

[2] The ALJ noted that Dr. Nolan's "treatment notes show he has primarily treated the claimant for bronchitis, otitis, and diabetes." (*Id.*) However, a review of Dr. Nolan's records also reveals examinations of Plaintiff in follow-up to her diagnosis of MS and following her neck surgery. (Tr. 306, 441, 445).

On February 24, 2004, Dr. Nolan completed a medical assessment of Plaintiff's ability to perform work-related activities. (Tr. 227-228). Again, Dr. Nolan concluded that Plaintiff: was limited in her ability to lift; could stand and/or walk for a total of one hour per workday, and for one hour without interruption; could sit for only one hour per workday, and for only one hour without interruption; could never climb, balance, stoop, crouch, kneel or crawl; was limited in her ability to reach, handle, feel, push and pull; and was restricted from working around moving machinery, temperature extremes, chemicals and vibrations. (Tr. 227-228). Dr. Nolan completed another assessment on February 26, 2004, in which he noted that Plaintiff was not able to work at that time. (Tr. 229).

The ALJ diminished the weight of Dr. Nolan's RFC assessments, and, instead, relied on the RFC opinion of Dr. Goren, a nonexamining doctor. (Tr. 27). In doing so, the ALJ determined that the Expanded Disability Status Score rating assessed by Dr. Reed, Plaintiff's treating neurologist, was controlling. (*Id*.) Thereafter, the ALJ placed "great weight" on Dr. Goren's assessment of Plaintiff's functional limitations because such assessment was based significantly on the "controlling" EDSS rating given by Dr. Reed. (*Id*.)[3] As a result, because Dr. Nolan's assessment conflicted with Dr. Goren's

---

[3] While Dr. Goren stated, at one point in his testimony, that his opinions were based on "all the evidentiary records," his testimony shows that his opinions were, in fact, based almost entirely on the EDSS rating given by Dr. Reed. (Tr. 623-624, 630-633, 640). Such conclusion is evident from the following exchange during the hearing:

> ATTY: - - now you're saying, I'm very confused here, you're saying she's fully ambulatory, you don't restrict her standing at all, you don't restrict her walking at all. Am I correct, that's all based on Dr. Reed saying that she's a three [rating on the EDSS]?
> ALJ: Is that correct, doctor?
> ME: Yes, that's correct.

(Tr. 633).

assessment, the ALJ implicitly found that Dr. Nolan's assessment necessarily conflicted with EDSS rating given by Dr. Reed. (*See Id.*)

Plaintiff argues that the EDSS rating mostly measures only lower limb functioning, and, thus, is not an accurate overall determination of Plaintiff's ability to work. Defendant, on the other hand, points to an internet resource attached to her response (Doc. 6) which, in Defendant's interpretation, definitively finds that an EDSS rating of 3.0 means that Plaintiff has the ability to work a full day. Because "evidence which is not presented to the ALJ cannot be considered by the court[,]" the online information cited by Defendant will not be considered. *Wireman v. Commissioner of Social Security*, 60 Fed. Appx. 570, 572 (6th Cir. 2003); *Ferguson v. Commissioner of Social Sec.*, 89 F.3d 833 (6th Cir. 1996) (stating that "review is limited to the evidence in the administrative record").[4]

According to Dr. Goren, a 3.0 EDSS rating meant Plaintiff was "fully

---

[4] The internet resource attached to Defendant's memorandum (Doc. 6) states that an EDSS 3.0 rating means "[m]oderate disability in one FS, or mild disability in three or four FS. Fully ambulatory." The internet resource further states that an EDSS rating of 4.5 means "[f]ully ambulatory without aid, up and about much of the day, able to work a full day, may otherwise have some limitation of full activity or require minimal assistance; characterized by relatively severe disability; able to walk without aid or rest some 300 meters."

Most notably, however, the internet resource states that "[d]espite being the standard method of evaluating disability, the EDSS is criticised [sic] for placing too much emphasis on the use of the legs and being insensitive to clincial change. Quantifying MRI scans is widely used in clinical trials to evaluate disease status but correlates rather poorly with disability probably because so many MS lesions are silent (have no clinically detectable symptoms). Many other measures have been used to quantify various aspects of disability in MS . . . [o]f these, only the Scripps Neurologic Rating Scale and the Fatigue Severity Scale (FSS) are widely recognised [sic] but their use is dwarfed by that of the EDSS and MRI evaluation."

Dr. Goren himself testified that Plaintiff was never tested for fatigue, despite specific tests designed to do so. (Tr. 629).

ambulatory." (Tr. 640). Dr. Goren's testimony implicitly suggests that an EDSS 3.0 rating, meaning a patient is "fully ambulatory," equates, in Plaintiff's case, to: no limtiations in sitting, standing or walking; the ability to carry twenty pounds occasionally and ten pounds frequently; and no restrictions ins stooping, kneeling, crouching, crawling, reaching, handling, fingering or feeling. (Tr. 618-620).

However, Dr. Goren's testimony fails to explain how such a rating, in and of itself, equates to such limitations (or lack thereof), especially in light of the fact that he never actually examined Plaintiff. In other words, it is unclear why an EDSS rating of 3.0, in and of itself, supercedes Dr. Nolan's "more precise opinions" about Plaintiff's physical limitations that were based on Dr. Nolan's actual, personal examination. *See Smith v. Astrue*, 565 F.Supp.2d 918, 924-925 (M.D. Tenn 2009) (finding that an ALJ's reliance on a "superficial" GAF score, in and of itself, fails to explain the rejection of "more precise opinions" regarding the degree of a claimant's limitations).

Further, from what the undersigned can discern from the administrative record herein, "a person with an EDSS score of 5 or less can walk independently for about 200 meters, whereas a person with a higher score can walk a lesser distance, may require assistance with walking (a cane or walker), or may be unable to walk." (Tr. 43). The mere ability to walk independently for about 200 meters does not suggest an unlimted and unrestricted ability to stand or walk throughout the workday, or the absence of any other limitations.

Simply put, there is a lack of substantial evidence in the record supporting the

-11-

conclusion that a 3.0 EDSS rating conflicts whatsoever with the more precise functional limitation assessment provided by Dr. Nolan. "[I]t is clearly established law that the opinion of a non-treating 'one-shot' consultative physician or of a medical advisor cannot constitute substantial evidence to overcome the properly supported opinion of a physician who has treated a claimant over a period of years." *Daniels v. Comm'r of Soc. Sec.*, 140 Soc.Sec.Rep.Serv. 435, *7 (S.D. Ohio Mar. 16, 2009) (citing *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir.1983)).

Further, while the ALJ noted that Dr. Nolan was not a specialist, and also questioned the extent of his treatment of Plaintiff, such inquiries are made in determining what weight to give a treating doctor's opinion if it is not entitled to controlling weight. *See* 20 C.F.R. § 404.1527(d). Here, there is a lack of substantial evidence supporting the ALJ's conclusions that Dr. Nolan's opinions were not entitled to controlling weight.

Accordingly, the ALJ erred in completely disregarding Dr. Nolan's opinions on the basis that they conflicted with Plaintiff's EDSS rating as assessed by Dr. Reed. Further, the ALJ erred in disregarding the opinion of Dr. Nolan in favor of the contrary opinion offered by the nonexamining physician, Dr. Goren.

### Dr. Louis

Plaintiff also contends that the ALJ erred by failing to adequately address the report of Dr. Louis, who performed a consultative neurological examination at the request of the Disability Determination Service ("DDS"). (Tr. 24, 26, 174-176). Dr. Louis examined Plaintiff in November 2002, and prepared a report in which he noted:

> [Plaintiff] should not be involved in activity requiring flexion extension movements of her head and neck upwards and downwards. She is limited on her ability to look to the right and left as well. She should not do any lifting of more then one pound above the level of the shoulders. She should not do any running or jumping. She should not undergo any physical stresses on her neck from other activities as well. At this time, I place no further restrictions of her activities, however, I feel she must undergo intense review of her thoracic spine lesion and her cervical spine multiple lesions, by her treating neurosurgeon and let him make the appropriate recommendations for treatment.

(Tr. 174).

The ALJ's decision provides no more than a mere reciting of Dr. Louis' findings. (Tr. 24, 26). Nowhere in the decision does the ALJ set forth what weight, if any, was given to Dr. Louis' opinions.

Pursuant to 20 C.F.R. § 404.1527(f)(2)(ii):

> Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

*See also Burnett v. Comm'r of Soc. Sec.*, No. C-1-07-843, 2009 WL 1586658, *9 (S.D. Ohio Jun. 4, 2009)(unreported); 20 C.F.R. § 416.927(f)(2)(ii). Simply put, an ALJ must "provide meaningful explanations for the weight they give to a particular medical source opinion." *Burnett*, 2009 WL 1586658 at *9.

Here, the ALJ's decision fails to set forth the weight given to Dr. Louis' opinion,

and further fails to explain the reasons for the weight given.

### Dr. Guo

Plaintiff further asserts that the ALJ erred in dismissing the opinion of Dr. Guo, another treating physician. The ALJ rejected, at least in part, Dr. Guo's RFC assessment because, according to the ALJ, such opinion was "poorly explained" and inconsistent with the treatment notes of Dr. Saul, a neurosurgeon who examined Plaintiff upon a referral by Dr. Guo. (Tr. 28).

Dr. Guo provided a medical assessment of Plaintiff's ability to perform work-related activities in July 2007. (Tr. 507-508). Dr. Guo concluded that Plaintiff: could only lift less than five pounds; could stand for only three hours per workday, and one hour without interruption; had no limitation on her ability to sit; could never climb, balance, stoop, crouch, kneel or crawl; was affected in her ability to reach, handle, feel, push, pull, see, hear and speak; could not work around heights, moving machinery, temperature extremes, chemicals, dust, nosie, fumes, humidity and vibrations. (*Id*.) According to the ALJ, Dr. Guo's limtiations reduced Plaintiff's working "capacity to less than sedentary." (Tr. 28).

In discounting Dr. Guo's assessment, the ALJ specifically pointed to Dr. Saul's treatment notes from July and August 2007. (*Id*.) In July 2007, Dr. Saul found that an MRI of Plaintiff's cervical spine was "less than useful as far as making a definitive diagnosis" because it failed to "answer the question [of] whether or not" Plaintiff had a structural problem causing the increased pain she alleged. (Tr. 517). Dr. Saul

recommended that Plaintiff "undergo a myelogram/CT scan of her cervical spine to better delineate any pathology in the spinal canal that might be correctable with surgery." (Tr. 517).

Plaintiff underwent a myelogram/CT in August 2007. (Tr. 518-519). The myelogram/CT scan revealed:

1. Straightening of the cervical spine.

2. Anterior and posterior cervical fusions extending from C4 to C6 with interbody bone plugs at both levels. The fusion levels appear stable and solid.

3. Mildly compresses central disc protrustion at C2-C3.

4. Broad bar like spondylotic protrusion at C4-C5, virtually abutting the cord.

5. Broad lobulated spondylotic protrustion lateralizing leftward at C5-C6 with moderate cord compression/flattening anterolaterally.

6. Multilevel uncinate athropathy at multiple levels without high-grade foraminal stenosis - see above

(Tr. 519-520). Thereafter, Dr. Saul wrote the following to Dr. Guo:

> She does have progressive spondylitic changes behind the disk bases at C4-5 and C5-6. These are her previously operated levels done from the anterior approach by Dr. Paul Lewis which was the surgery prior to mine which was the posterior approach. Inspite of these radiographic findings, there is not a high probability that operating on these would provide her any significant chance of eliminating or reducing her symptoms. The surgery necessary to do that would be a major anterior cervical complex procedure entalling [sic] taking down all of the anterior column from the bottom of C3 to the top of T1. The risks of that surgery at this point far outweigh any benefit that the patient may get from surgery.

(Tr. 522). As an alternative to surgery, Dr. Saul recommended that Plaintiff confer with a pain managment specialist. (*Id.*)

The ALJ apparently found some inconsistency between Dr. Saul's findings and Dr. Guo's opinions. However, a review of these records reveals no apparent inconsistency. Instead, Dr. Saul simply reported to Dr. Guo that Plaintiff's myelogram/CT produced "radiographic findings" of "progressive spondylitic changes behind the disk bases at C4-5 and C5-6" which, according to Dr. Saul, if surgically repaired, would not likely eliminate or reduce Plaintiff's symptoms, *i.e.*, her headaches, neck pain and shoulder pain. (*Id.*) Instead, in Dr. Saul's opinion, pain management was the best course for treating Plaintiff's pain symptoms. (*Id.*)

In dismissing Dr. Guo's opinions in favor of Dr. Saul's findings, the ALJ relied significantly on Dr. Saul's statement that Plaintiff "had no radicular nerve root or cord symptoms." (Tr. 28, 521). The record cited by the ALJ is the letter from Dr. Saul to Dr. Guo, written after the myelogram/CT was performed, that states specifically:

> Lisa's symptoms today are the same as in her previous visit. She has bilateral suboccipital and occipital headaches, bilateral neck pain and bilateral shoulder pain affecting her trapezius muscles. These are all axial musculoskeletal complaints. She has no radicular nerve root or cord symptoms.

(Tr. 521).

Apparently, based on Dr. Saul's statement of Plaintiff's reported symptoms, the ALJ concluded that "there is no objective evidence of any significant changes since April 2007, when the claimant alleged a worsening of her headaches and neck pain." (Tr. 28).

However, Dr. Saul's note suggests that Plaintiff's headaches and neck pain complaints were musculoskeletal symptoms, not radicular nerve root or cord symptoms. (Tr. 521). Further, Dr. Saul's letter suggests a finding of "radiographic findings" supporting Plaintiff's alleged symptoms. (Tr. 522). Thus, it is unclear from a review of the ALJ's decision and the records cited therein how Dr. Saul's simple statement of Plaintiff's complaints supports the ALJ's conclusion. Therefore, substantial evidence does not support the ALJ's rejection of Dr. Guo's opinion.

Accordingly, Plaintiff's first and second assignments of error should be sustained. Because the ALJ rejected the opinions of two treating physicans, and because those two opinions are not necessarily consistent, this matter should be remanded for further evaluation of the treating source opinions, as well as the opinion of the examining physician, Dr. Louis. After examining all of the medical source opinions, the ALJ should determine an accurate and supported RFC finding.

**B.**

In her fifth assignment of error, Plaintiff maintains that the ALJ's hypothetical questions posed to the vocational experts were improper because they did not include the significant limitations found by Dr. Nolan, Dr. Guo and Dr. Louis. Because the hypothetical question posed to the VE, and upon which the ALJ ultimately relied, simply restated the RFC conclusion of Dr. Goren, "the hypothetical question suffers from the same problems as the RFC[.]" *See White v. Comm'r of Soc. Sec.*, 312 Fed.Appx. 779, 789 (6th Cir. 2009).

Accordingly, Plaintiff's assignment of error in this regard should be sustained. As set forth above, further fact-finding is necessary.

### III. REMAND

A sentence four remand provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Sec'y of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175. "It is well established that the party seeking remand bears the burden of showing that a remand is proper under Section 405." *Culbertson v. Barnhart,* 214 F. Supp.2d 788, 795 (N.D. Ohio 2002) (quoting *Willis v. Sec'y of Health & Human Servs.,* 727 F.2d 551 (6th Cir. 1984)).

Here, because the ALJ erroneously rejected the opinions of two treating physicans, and the opinion of an examining doctor, and because those two opinions are not necessarily consistent, this matter should be remanded for further evaluation of the medical source evidence. After examining all of the medical source opinions, the ALJ should determine an accurate and supported RFC finding and present hypothetical questions to the vocational expert that accurately portray Plaintiff's impairments and limitations.

## IV. CONCLUSION

Based upon the foregoing, the undersigned concludes that remand is appropriate in this matter because there is insufficient evidence to support the ALJ's decision.

**IT IS THEREFORE RECOMMENDED** that the decision of the Commissioner be **REVERSED**, and this matter be **REMANDED** under sentence four of 42 U.S.C. § 405(g).

On remand, the Commissioner shall reevaluate the weight to be given to the opinions of Plaintiff's treating physicians and other medical source evidence, obtain further evidence as necessary, and provide an accurate RFC assessment. Additionally, the Commissioner's hypothetical questions to the vocational expert shall accurately portray Plaintiff's impairments and limitations.


Date:  August 11, 2009                         s/ Timothy S. Black
                                               Timothy S. Black
                                               United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DIANA PENDLAND, | : | Case No. 1:08-cv-485 |
| | : | |
| Plaintiff, | : | Barrett, J. |
| | : | Black, M.J. |
| vs. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **TEN DAYS** after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to **THIRTEEN DAYS** (excluding intervening Saturdays, Sundays, and legal holidays) when this Report is being served by mail and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **TEN DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).